May it please the Court, my name is Linda Bell. I'm an assistant federal public defender in the District of Nevada, and I represent the appellant Anthony Wright. I'd like to reserve two minutes for rebuttal, and I will keep an eye on my time. Mr. Wright in this case is challenging the sentence that he was given in the Nevada State Courts under the Eighth Amendment prohibition of cruel and unusual punishment. Mr. Wright was convicted of six counts of possession of stolen property. Crimes that in Nevada carry, two of them carried a penalty of one to ten years, and the remainder carried penalties of one to five years. The judge adjudicated him a habitual criminal and sentenced him to six life sentences, running three of them consecutive, which means that Mr. Wright essentially received a sentence of life without the possibility of parole. Essentially, and really, I mean, he's eligible for parole, isn't he? And eligible for parole. And eligible for parole. However, it's very unlikely, first of all, that he would make each of those. It's not common on life sentence cases for people to make their first paroles, and the likelihood of surviving 30 years in prison to the age of 70 is unusual. What I have is the standard that we're looking at here, given the Supreme Court law, and the fact that, you know, it's not like he would be 105 before he's eligible, which might make it almost an actuarial impossibility. He does have a sentence with parole. He would be, while older, it certainly wouldn't be chronologically impossible. So the difficulty I have is, when you fit that into the Supreme Court law, under what theory would you have us grant relief for him? What's the best Supreme Court case? The best Supreme Court case for us is Solemn v. Helm. And in that case, obviously, the person was facing a life without sentence. So this is a little bit different. It falls sort of in between. Yeah. And that's where we run into the rub with controlling Supreme Court law. It is quite different from that case, because there there was no parole, correct? That's true in that case. And this is, in some ways, like the case of Lockyer, which the Court said falls between Rummel and Solemn, where Lockyer received a high penalty. I think the difference that we have, though, between Lockyer and Mr. Wright's case is that in Lockyer, the U.S. Supreme Court said the courts were required to defer to the California's. You're talking about Andrade or? Lockyer v. Andrade, yes. I just want to make sure. I'm sorry. Because we didn't do too well in that case. But the Supreme Court said that this court was required to defer to the California's determination under Rummel. In our case, we don't have that. The Nevada Supreme Court didn't analyze this under anything. But isn't Lockyer v. Andrade at the minimum persuasive authority when we're looking at whether or not Nevada's habitual criminal statute is constitutional? When you look, we're not saying that the statute is unconstitutional. We're just saying as it was applied to Mr. Wright's case, the penalty is so disproportionate to what he did that it is violating the Eighth Amendment. And in Lockyer, the court said that factually that the case was very difficult to distinguish from Solem. And the analysis seemed to turn on the fact that the California Supreme Court had looked at the Rummel case and that's what they based their decision on. And we simply don't have that here. This Court may do an independent analysis of the record under Delgado because the Nevada Supreme Court made no findings. The Nevada Supreme Court summarily approved the district court's decision. And if we go and look at the district court decision, it simply says it doesn't even address his Eighth Amendment challenge. It just says his claim that his sentence is too high has no merit. So procedurally, he's in a much different place than Mr. Andrade was in his case. Additionally, if we look at his case, he actually has less of a record than either Mr. Helm or Mr. Andrade. It's sort of procedurally odd because at the time of his sentence, he had six felonies, but then two of them were reduced to misdemeanors. They all primarily are burglary, possession of property. He had one assault case that was reduced down to a misdemeanor, so it puts him in his position very similar to Mr. Helm in the Solemn case. Did he have a firearm conviction? He had at the time of sentencing, there were six. After he was sentenced, California reduced two of those felonies to misdemeanors. But he did have a firearm conviction in his case that's on habeas, right? He had an assault. The only thing I think that could be characterized as a violent conviction was an assault with a deadly weapon case, which was an improper self-defense case or excessive self-defense case where he received 30 days in jail. That case was one of the two cases that was reduced in 2002 by the state of California to a misdemeanor. The other offenses involved were? First-degree burglary. Burglaries, possession of stolen property cases, very similar to Mr. Helm's record in Solemn v. Helm. And if the Court doesn't have any additional questions, I'll reserve my time. Thank you. Thank you. Good morning. Vic Schulze, Senior Deputy Attorney General for the Warden in the State of Nevada. I noticed this morning listening to the other cases that most of the other cases that were argued before you this morning, you were trying to find what the facts are. This case is unique in a 2254 proceeding because we have to figure out what the law is, and the U.S. Supreme Court in Andrade said we have not consistently applied Eighth Amendment law in non-capital cases. One question before this Court is whether Solemn is still good law, and at the risk of sounding like an attorney and an advocate, the answer is yes and no, and it doesn't matter all at the same time. The U.S. Supreme Court never explicitly overruled Solemn, but in every case that followed Solemn, they declined to follow that three-part test of the internal comparison, the external comparison, and looking at the gravity of the sentence that they handed down in Solemn. They didn't apply that in those later tests. We'd certainly have to look at Solemn if you had a case where a person got life without parole. I think what we're reduced to because of the Supreme Court's concession in the Andrade case, that they haven't consistently applied Eighth Amendment case law, is we're reduced essentially to looking at the facts. I agree. The case that's, I think, most telling is probably the Andrade case. Andrade is convicted of two misdemeanors. He got essentially 50 to life because he got two consecutive 25-year sentences. The defendant in this case was convicted of six felonies, not misdemeanors. Andrade was convicted of misdemeanors. Wright was convicted of six felonies, and he only, I use that term generously, I concede, as a prosecutor, but he only got 30 years. If he makes all of his parole board hearings successfully, he will serve 30 years. That's significantly less than 50. Essentially, Mr. Andrade, I'm sorry, Mr. Wright, seemed to be doing life on the installment plan. It seemed to be. The habitual offender statutes address those type of individuals. In California, we have the three strikes, and then in Nevada, you've got your habitual offender. And what Lockyer v. Andrade deals with the three strikes, correct? Yes. So are there material differences between Nevada's habitual offender criminal statute and California's three strikes? And if so, how or how do you purport is Andrade persuasive in terms of how we look at it? I think for purposes of Eighth Amendment jurisprudence, there's no meaningful difference at all, because apparently what we're looking at under Eighth Amendment jurisprudence is whether or not the crime is, under this very narrow disproportionality test, essentially the length and how heavy the sentence is. Not only in Solemn was the sentence life without, but in Solemn, and I think it was a South Dakota statute, the judge in South Dakota didn't even have any discretion. In this case, the judge not only had the discretion, but under the cases we cite in our answering brief by the Nevada Supreme Court, although that statute seems to be written by the legislature as being mandatory, the state Supreme Court interpreted that in a much more relaxed way and said, no, the district court judges actually have to exercise discretion when they're sentencing somebody under the habitual sentence, habitual criminal statute. It happened in California when the California Supreme Court said, even though it says shall, that courts have the discretion to strike priors. In Nevada, they have to, the record has to show the exercise, that discretion. And one more point I think that militates against granting relief in this case, there were six felonies that Mr. Wright was convicted of. Three of those sentences were consecutive, but three were concurrent. So from my standpoint as a prosecutor, Mr. Wright got three free felonies. He's only doing 30 years, and again, I use only in its broad sense. He could have gotten 60 years, but he only got 30, and so he got a real break from the sentencing court. Now, the Ewing case that came out the same day has some fantastic language on the policy supporting habitual criminality and incarcerating somebody simply to keep them off the streets, when they've demonstrated throughout their adult life that they simply will not follow the rules of society and society's right to protect itself from career criminals. That same day in Andrade, a misdemeanant was given 50 years, and in our case, a six-time, in this case, six-time felon was simply given 30 years. So based on the Supreme Court's concession in Andrade, and it's an interesting case under the standard of 2254D. This is an interesting case because we don't have consistently applied law beyond the narrow rule that there is a very narrow proportionality requirement for noncapital cases under the Eighth Amendment. But we don't have what the Supreme Court has not given us, and this is what makes these cases interesting until we get some guidance from the U.S. Supreme Court. There is no applicable theory. There's no framework. There's no legal framework to apply the disproportionality standard. And so we have the rule, but we don't have any guidance, so all we can do is look at a couple of cases from the Supreme Court, and we're reduced, I guess, to the Supreme Court. Kagan. What is required or not required as of the time of this case, 2000? What's that? Proportionality. Yes. Absolutely. But what we don't have is a we don't have a framework. We don't have elements. We don't have a balancing test, because although we were given that in Solemn, the Solemn, that three-part test in Solemn was never applied in a successive case by the Supreme Court. And in a lot of these cases, the Supreme Court didn't even come up with a majority opinion. We've only got plurality opinions. So this whole area is really up in the law. We have a very general rule on proportionality. When you compare the facts of all this case, we've got a six-time felon in this case alone, case of conviction, got 30 years, had an atrocious record. At the time, my reading of the priors is that that assault with a deadly weapon, which is a crime against a person, was still in effect at the time the sentencing judge handed down that sentence, regardless of what happened afterwards. Was one of the charges here a firearms charge that he got convicted? Assault with a deadly weapon. That's the way I read one of the priors. I think you've got a copy of the notice at 2 EOR 289 or 4, it might be 489. You've got a copy of the charges, at least the first page of the notice of habitual criminality, and that assault charge is in there. Assault. The State court didn't apply proportionality? The State court read this. Another confusing issue, I think. As the claim was pled in the State petition, the argument was that it was a the constitutional amendment was cited, but it was also argued that the district court judge abused his discretion in handing down an enhanced sentence for each individual crime as opposed to overall. And it metamorphosized slightly as we moved into federal court. I didn't think it was enough, to be honest, to argue that it was unexhausted because I thought I would lose if I raised that in the district court. It's essentially the same claim, slightly different wrinkle. I think when you, because they alleged in State court in the habeas petition, the post-conviction petition, that it was an abuse of discretion for the judge to hand down the six habitual sentences instead of just a single one, I think that was interpreted by the State courts to be a State court claim under that statute. And I agree with opposing counsel that what the Nevada Supreme Court said was it's simply legal under our statute. Because we're allowed to hand down multiple habitual sentences. But on the constitutional issue, that is not inconsistent with what the Supreme Court did in Andrade and did in Ewing. In the Ewing case, the defendant stole a couple of golf clubs, got caught out in the parking lot, got a massive sentence. And Andrade got 50 years. So if we're reduced simply to comparing facts of sentences in these cases, and I think we are because we don't have a framework to apply the Eighth Amendment, the rule itself. If we look at simply the facts, Mr. Andrade got a relatively lenient sentence. He could have gotten 60 years, and that would have been okay. I'm sorry, Mr. Wright. I think under 2254d, nothing that the State courts did was an unreasonable application of U.S. Supreme Court law as defined by Andrade. The Andrade case specifically, they used that case to define, ironically, what that term means in the context of federal habeas by a State inmate. And in that case, they said we don't have consistently applied laws, save for a general proposition of this narrow proportionality principle. And if you compare the sentences handed down in Ewing and Andrade and the fact that Wright got 30 years for six felonies with an atrocious record, I think relief needs to be denied. Thank you. Thank you. First, I'd like to just point out that this is how Mr. Wright raised this issue in his ground. He says that the imposition of six life sentences is per se violative of the Eighth Amendment prohibition against cruel and unusual punishment by the standards of a decent and involving society, to which the district court responded. Defendants claimed that his criminal history was minor, and the court abused its discretion in ordering consecutive life sentences as without merit. And that's it. The Nevada Supreme Court then just summarily affirms everything that the district court did. So there is no proportionality analysis. There's no constitutional analysis. There's nothing done by the Nevada Supreme Court. Also, we don't need to have a specific test that sets forth every bit of analysis here. And that's why, in the case of Strickland, when Panetti versus Quarterman, the U.S. Supreme Court said, we can have general principles. That's what Strickland is. It's a general principle of effective assistance of counsel that varies with the facts of each case. And this is similar to that, that we have to look at the specific facts of the case to see if this is the rare case. And this is the rare case. Mr. Wright got an outrageous sentence for possession of stolen property that will probably ensure that he spends the rest of his life in prison, particularly when you compare it to, if we look to sort of the test in solemn, which is just instructive, but the sentences in Nevada, I mean, he could have raped a 5-year-old and gotten less time. Murder, unless you get a life sentence. But the analysis says it's a ritual recidivist. Yes. The habitual criminal aspect of this that puts him where he is, not the nature of the crime. But that's one of the factors that they looked at in solemn is, is this, how is this proportionate to other sentences given in the jurisdiction or the severity, the comparative severity, as well as when you look outside? And I see my time is up. Thank you. Thank you. Thank you both for your arguments. These are very difficult cases, both because of the facts and also the Supreme Court's less than clear articulation of what we're supposed to do. So I appreciate both the briefing and the argument. The cases of Wright v. Crawford is submitted and we're adjourned for the morning. Thank you.
judges: McKeown, Callahan, Siler